IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JACOB ALEXANDER LESIAK,**

       **Petitioner,**

v.                                                                             Civil Action No. 3:23-CV-21
                                                                             (GROH)

**MELISSA BAYLISS,**

       **Respondent.**

### AMENDED[1] REPORT AND RECOMMENDATION TO DENY PETITION FOR HABEAS CORPUS RELIEF AND DENY PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER

### I.    INTRODUCTION

On February 3, 2023, the *pro se* Petitioner, a federal inmate who is incarcerated[2] at Morgantown FCI in Morgantown, West Virginia, filed the above-styled habeas corpus action pursuant to 28 U.S.C. § 2241. ECF No. 1.[3] As relief, Petitioner seeks an order directing the BOP to calculate and apply time credit to which he claims he is entitled, and to grant Petitioner immediate release to home confinement, and release to supervised release on July 2, 2024. ECF No. 1-1 at 1, 17. On February 13, 2023, Petitioner filed a

---

[1] This Amended Report and Recommendation is revised in response to the Objection [ECF No. 21] and Amended Objection [ECF No. 22] filed by the Respondent on April 19, 2023, and April 24, 2023. The amendment herein does not modify the recommendation on disposition, but rather, at page 12 – 13 herein, replaces the phrase "reduce his term of supervised release" with the phrase "towards early transfer to his term of supervised release", thereby reducing the inmate's term of confinement, not the term of supervised release.

[2] According to the Bureau of Prisons inmate locator, Petitioner's release date is October 16, 2024. https://www.bop.gov/inmateloc/.

[3] ECF Numbers cited herein refer to case number 3:23-CV-21 unless otherwise noted.

motion seeking a preliminary injunction and expedited relief. ECF No. 6. On March 1, 2023, Petitioner filed a motion requesting expedited consideration of his petition, and for declaratory relief. ECF No. 12.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the District Court deny Petitioner's request for injunctive relief and that the petition be denied and dismissed without prejudice, and Petitioner's request for declaratory relief be terminated as moot.

## II.  PROCECURAL HISTORY

### A.  Conviction and Sentence in the Northern District of Ohio[4]

On August 29, 2018, an indictment was returned in the Northern District of Ohio, case number 1:18-CR-513, which charged Petitioner and several co-defendants with conspiracy and money laundering. ECF No. 1. On October 17, 2019, Petitioner entered a guilty plea to Counts 1 and 6 of the indictment, pursuant to a plea agreement. ECF Nos. 192, 264, 276; see also unnumbered docket entry dated October 17, 2019. On March 16, 2020,[5] Petitioner was sentenced to 68 months for each count, with those sentences to be served concurrently with one another, followed by three years of

---

[4] All CM/ECF references in Section II.A., unless otherwise noted, refer to entries in the docket of Criminal Action No. 1:18-CR-513, from the Northern District of Ohio, available on PACER. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (Courts "may properly take judicial notice of public record); Colonial Penns. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[5] Sentence was imposed on March 16, 2020, but the order of judgment was not executed or filed with the Clerk until March 22, 2020. ECF No. 264.

supervised release for each count, also to be served concurrently with one another.[6] ECF Nos. 264, 277.

### B. Appeal to the Court of Appeals for the Sixth Circuit

Petitioner appealed to the Sixth Circuit Court of Appeals on March 30, 2020. ECF No. 269. None of the issues raised in direct appeal related to issues raised in this § 2241 proceeding. By order entered on April 6, 2021, the Sixth Circuit in an unpublished opinion, affirmed the judgment of the district court.

### C. Instant Habeas Corpus Proceedings

On February 3, 2023, Petitioner filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241, along with a memorandum of law, and a number of exhibits in support thereof. ECF Nos. 1, 1-1 through 1-26. The petition alleges that Petitioner's time credits under the First Step Act have been improperly calculated. ECF No. 1 at 1.

---

[6] In its opinion on direct appeal, the Sixth Circuit summarized the proceedings:

Pursuant to a written plea agreement, Lesiak pleaded guilty to the two money-laundering-conspiracy counts in exchange for dismissal of the marijuana-distribution count. . . . Lesiak waived his rights to appeal and collaterally attack his conviction and sentence but reserved the right to appeal any sentence in excess of the statutory maximum or any sentence that exceeded the guidelines range calculated in accordance with the sentencing stipulations and computations in the plea agreement and using the criminal history category determined by the court. He also reserved his right to bring claims of ineffective assistance of counsel and prosecutorial misconduct on appeal or in a collateral proceeding. The district court conducted a plea hearing and accepted Lesiak's guilty plea.

The probation office prepared a presentence report [which calculated] . . . a guidelines range of imprisonment of 121 to 151 months. Lesiak objected to the four-level enhancement for sophisticated laundering and a leadership role in the conspiracy. He asked the court to grant a downward departure based on his rehabilitation in the years since the offense.

At the sentencing hearing, the district court found that the probation officer's decision to add sophisticated laundering and leadership enhancements was likely correct, but it declined to adopt those enhancements . . . [which] resulted in a guidelines imprisonment range of 57 to 71 months. The court sentenced Lesiak within that range to concurrent terms of 68 months' imprisonment on each count to be followed by three years of supervised release.

C.A. 6th Cir. 20-3370, Docket Entry 20.

The undersigned issued a Notice of Deficient Pleading and Intent to Dismiss on February 7, 2023, because Petitioner failed to complete the Court-approved form in accordance with the Local Rules of Prisoner Litigation Procedure ("Local Rules" or "LR PL P"). ECF No. 4. Further, the Notice advised Petitioner that failure to refile the Court-approved form, properly completed in accordance with the Local Rules, could result in dismissal of Petitioner's action within 30 days. Id. The packet of Court-approved forms for filing a petition for habeas corpus under § 2241 was sent to Petitioner along with the Notice. ECF No. 4-1.

On February 13, 2023, Petitioner filed a motion and memorandum for a preliminary injunction, which asserts that Respondent is "obligated to calculate Petitioner's [First Step Act] Time Credits and his Projected Release Date [ ], and as a consequence is obligated to transfer Petitioner to Prerelease Custody on February 22, 2023." ECF No. 6 at 1. Among other relief, Petitioner requests that the Court issue an injunction which requires the Respondent to confirm Petitioner's PATTERN[7] score, and projected release date, and transfer Petitioner to home confinement. Id. at 5. The Court issued an Order to Show Cause on February 13, 2023, the same date Petitioner's motion for injunctive relief was filed. ECF No. 7.

On February 23, 2023, Respondent filed a response to the Order to Show Cause. ECF No. 10. Respondent contends that: (1) Petitioner failed to exhaust his administrative remedies, which denies this Court of subject matter jurisdiction to address the merits of Petitioner's claims [ECF No. 10 at 4 – 9]; (2) Petitioner is not entitled to a preliminary injunction because he cannot meet the first prong of the Winter test, that he is likely to

---

[7] Prisoner Assessment Tool Targeting Estimated Risk and Needs.

succeed on the merits [Id. at 9 – 11]; and (3) Petitioner is not eligible to apply for additional time credits under the First Step Act [Id. at 11 – 14].

Petitioner then filed a motion to expedite his 2241 proceeding and motion for declaratory relief pursuant to F.R.C.P. Rule 57, along with a memorandum in support thereof on March 1, 2023. ECF Nos. 12, 12-1. On March 7, 2023, Petitioner filed a motion to excuse excess pages, and to excuse errors in his 2241 petition. ECF No. 13. On March 31, 2023, Petitioner refiled the Court-approved form. ECF No. 14. On that same date, Petitioner also filed a motion to excuse delay, and motion for leave to file excess pages. ECF Nos. 15, 16.

In the court-approved form Petitioner asserts three grounds for relief: (1) that Petitioner's PATTERN score was incorrectly calculated, resulting in a medium risk score [ECF No. 14 at 5]; (2) the BOP has failed to comply with federal statutes by refusing to grant Petitioner First Step Act Earned Time Credit rate of 15 days for every 30 days of participation [Id. at 6]; and (3) BOP has failed to update Petitioner's projected release date to include his Earned Time Credit under the FSA [Id.]. Petitioner contends that he has filed BP-8, BP-9, and BP-10, administrative remedies, all of which were denied. Id. at 7. For relief, Petitioner requests that the Court order the BOP to: (1) correct his PATTERN score, and to credit Petitioner with all credit for EBRR [Evidence Based Recidivism Reduction] programs; (2) calculate his First Step Act Earned Time Credits, that will result in 680 days of ETC; and (3) to release Petitioner to home confinement effective February 22, 2023. Id. at 8.

## II. LEGAL STANDARD

### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[8] is designed largely to discourage the filing

---

[8] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

> of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C. Post-Conviction Remedies and Relief Including Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction. By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. "As we noted in O'Brien [v. Moore, 395 F.3d 499, 505 (4th Cir. 2005)], the 'essence of habeas corpus is an attack by a person in custody upon the legality of that custody' and 'the traditional function of the writ is to secure release from illegal custody.'" Obando-Segura v. Garland, 999 F.3d 190, 194 (4th Cir. 2021), quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Accordingly, a petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser, 411 U.S. at 498 – 499. "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

---

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

7

### D. Requests for Injunctive Relief

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165, 130 S. Ct. 2743, 2761, 177 L. Ed. 2d 461 (2010) (citing Weinberger v. Romero–Barcelo, 456 U.S. 305, 311–312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)). "A preliminary injunction is reviewed for abuse of discretion. . . . We review factual findings for clear error and legal conclusions *de novo*." Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship, 918 F.3d 353, 366 (4th Cir. 2019) (citing Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011)).

The standard for granting injunctive relief was articulated by the United States Supreme Court which held in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) that:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

As restated by the Fourth Circuit, when a plaintiff seeks the extraordinary remedy of a preliminary injunction:

> In order to receive a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. Each of these four requirements must be satisfied.

Mountain Valley, 918 F.3d at 366 (internal citations omitted). The Fourth Circuit has further instructed that:

> In addition to a likelihood of success on the merits, for a preliminary injunction to issue, Plaintiffs must show they are likely to suffer irreparable harm in the absence of preliminary relief. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction are not enough.

Roe v. Dep't of Def., 947 F.3d 207, 228 (4th Cir. 2020), as amended (Jan. 14, 2020) (internal citations omitted).

This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").

### III.   ANALYSIS

#### 1.   Petitioner's Failure to Exhaust Administrative Remedies

Respondent argues that Petitioner has failed to exhaust his administrative remedies, and thus, this Court is without jurisdiction to consider his claims on the merits. The undersigned agrees that Petitioner's failure to exhaust administrative remedies is fatal to his claim.

Attached to Respondent's response to the order to show cause are exhibits, including: a declaration from Misty Shaw, a paralegal at the Bureau of Prisons Mid-Atlantic Regional Office (MXRO) [ECF No. 10-1], Public Information Inmate Data [ECF No. 10-2], Inmate History Administrative Release history [ECF No. 10-3], and Administrative Remedy Generalized Retrieval Full Screen Format [ECF No. 10-4]. The

Administrative Remedy Generalized Retrieval history shows that Petitioner has filed five administrative remedies while incarcerated:

> (1) Remedy ID 1138272-F1[9], received on October 24, 2022, regarding Petitioner's FSA credit, was rejected October 24, 2022, with the remark, "you are only permitted one continuation page, all other pages must be labeled exhibits and will not be returned to you. And you need to submit a 8-1/2" [sic] [ECF No. 10-4 at 2];
>
> (2) Remedy ID 1138272-F2, received on October 25, 2022, regarding Petitioner's FSA credit, was closed with status reason "WDN" [Id.];
>
> (3) Remedy ID 1145305-F1, received December 19, 2022, regarding the First Step Act[10], was closed with the notation "DNY" [Id. at 3];
>
> (4) Remedy ID 1145305-R1, received January 10, 2023, regarding the First Step Act, indicates that a response was due, March 11, 2023, and that the matter was under current investigation [Id.]; and
>
> (5) Remedy ID 1145305-A1, received February 15, 2023, regarding the First Step Act, contains the following remarks, "BP10 is pending response. Refrain from appealing prematurely." Id. at 4.

The administrative remedy documents provided by Respondent show that Petitioner did

---

[9] The declaration of Misty Shaw explains how Remedy ID numbers are used to track cases:

The numerical portion of the Remedy ID before the hyphen is known as the Case Number which is used to track subsequent submissions or appeals of the same administrative grievance. Following the hyphen, there is a Submission ID comprised of one letter and one number. The letter indicates which level of the BOP administrative remedy program has received the grievance. The letter "F" indicates that the submission was received by an individual federal correctional facility. The subsequent number indicates the number of times an inmate has submitted the same request at the same level of the BOP grievance program. The letter "R" indicates that the submission was received by individual regional office. The letter "A" indicates that the submission was received by the BOPs Central Office.

ECF No. 10-1 at 2.

[10] The abstract for Remedy ID 1145305-F1, 1145305-R1, and 1145305-A1, all read only "FSA". It appears that these administrative remedies all address the First Step Act.

not exhaust his administrative remedies prior to filing the instant action.

Moreover, the petition states that Petitioner did not exhaust available administrative remedies. ECF No. 14 at 7. Although Petitioner states that he filed administrative remedies, he only addressed the denials of his BP-8 and BP-9 filings, both of which were addressed at the institutional level, and the BP-10 at the regional level. Id. However, Petitioner did not address the BP-11 which is filed at the Central Office. Id. Although Respondent provided records that demonstrate that Petitioner *pursued* administrative remedies at the regional office and central office, critically, those records show that Petitioner did not *exhaust* those administrative remedies through a decision on the merits. Petitioner argues that exhaustion of his administrative remedies is both futile and not required if he is likely to suffer irreparable harm and injury beyond his release date. ECF No. 14-2 at 5 – 7. Additionally, Petitioner contends that his incarceration beyond his release date constitutes irreparable harm. Id.

However, the Fourth Circuit has held that "[f]ederal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing to Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 - 35 (2d Cir.2001); Little v. Hopkins, 638 F.2d 953, 953–54 (6th Cir.1981).

Further, for the reasons set forth below, it is clear that Petitioner will not suffer irreparable harm absent injunctive relief.

Accordingly, Petitioner's claims may not be considered under § 2241, and this Court is without jurisdiction to consider his petition. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and

11

dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

### 2. Petitioner not entitled to Relief on the Merits

Even if Petitioner's claims were considered on the merits, he is still not entitled to relief under § 2241. Petitioner contends that he is entitled to early release from incarceration based on his Earned Time Credits under the First Step Act. However, Respondent counters that based on the current number of Petitioner's Earned Time Credits, such time is credited toward and reduced from the end of his term of supervised release, not from the end of his term of incarceration. ECF No. 10 at 11.

Respondent concedes that Petitioner is eligible to have his time credits applied because he is a low-risk inmate. ECF No. 10-5 at 3. However, Respondent asserts that as of February 11, 2023, Petitioner had accrued 880 program days (calculated from September 14, 2020, when he entered BOP custody), which converts to 290 days[11] of Time Credits, which are appropriately applied towards early transfer to his term of

---

[11] Pursuant to 28 CFR § 523.42(c):

(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR [Evidence-Based Recidivism Reduction] Programs or PAs [Productive Activities] recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.
(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:
(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and
(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

28 C.F.R. § 523.42.

Respondent contends that the calculation of 290 days of credit is determined by counting the total number of accrued calendar days (880), divided by the days in a month (30), which equals the number of calendar months (29). Each 30-day period of participation (29) is multiplied by the days of credit for 30 days of successful participation (10), which equals the total number of First Step Act credits (290). ECF No. 10-5 at 3.

supervised release. Id.; and ECF Nos. 10 at 4, 10-5 at 2. Further, Respondent contends that because Petitioner has not reached the maximum threshold of 365 days that can be applied towards supervised release, at this time he has 0 days of Time Credits to apply towards prerelease custody in either a halfway house or home confinement. Id. The application of Petitioner's First Step Act Time Credits is governed by 28 C.F.R. § 523.44.

In subparagraph (b), that rule provides:

> Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;
> (2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and
> (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

!
In subparagraph (c), the Rule addresses prerelease custody and provides that:

> The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:
> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> (iii) The prisoner is unlikely to recidivate.

!
Further:

> The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
> (3) The application of FSA Time Credits would result in transfer to supervised release **no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred**.

28 C.F.R. § 523.44(d) (emphasis added).

Respondent argues, citing to an attached exhibit, "MXRA 535.03 Inmate Profile" dated February 20, 2023, that Petitioner was deemed eligible to receive First Step Act Time Credits on October 7, 2020.[12] ECF Nos. 10 at 3, 10-6 at 1. Respondent further asserts that Petitioner has been evaluated pursuant to PATTERN on April 28, 2021, January 31, 2022, July 1, 2022, and January 3, 2023. ECF Nos. 10 at 3 – 4, 10-6 at 1. Petitioner's first two evaluations resulted in a medium recidivism risk (R-MED), but starting on July 1, 2022, Petitioner's recidivism risk was deemed low (R-LW). ECF Nos. 10 at 3 – 4, 10-7, 10-8. That low-risk evaluation makes Petitioner eligible to receive First Step Act time credits, which Respondent states were calculated form the date Petitioner entered BOP custody, September 14, 2020, through the date his FSA credits were calculated on February 11, 2023. ECF No. 10 at 4.

Petitioner argues that he is entitled to an additional five days of Earned Time Credit

---

[12] Pursuant to 28 C.F.R. § 523.42(a), "[a]n inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)."

14

for each thirty-day period of his incarceration. ECF No. 14-2 at 12. Pursuant to 28 CFR § 523.42(c)(2), it appears that Petitioner may be eligible to earn an additional five days of FSA Time Credits, for every thirty-day period that he successfully participated in EPRR Programs or PAs recommended. Whether those extra 145 days (five days of credit for 29 months) accrue towards Petitioner's sentence is determined by the Bureau of Prisons. However, the undersigned notes that even if Petitioner earned 145 additional Time Credits, 75 of those days (75 + 290 to reach the maximum 365) would be required to be credited toward Petitioner's term of supervised release before any days would be credit toward his term of incarceration. Petitioner's current release date according to the BOP Inmate Locator is listed as October 16, 2024. Even if he were granted 70 days of credit towards his sentence, he would still not be eligible for release until August 2024. For all the above reasons, the undersigned finds that even if Petitioner's claims were considered on the merits, that he fails to demonstrate he is entitled to relief.

### 3. Petitioner's Request for Injunctive Relief

As to Petitioner's request for injunctive relief, he is not entitled to such relief because he cannot meet the four-part standard necessary to demonstrate the need for injunctive relief under <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7 (2008). An injunction or temporary restraining order ("TRO") may be granted under the authority of Federal Rule of Civil Procedure 65. Pursuant to Rule 65(a):

> **(1) *Notice.*** The court may issue a preliminary injunction only on notice to the adverse party.
> **(2) *Consolidating the Hearing with the Trial on the Merits.*** Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of

> the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

The Supreme Court has long held that, "under federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 439 (1974).

The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held.

Pursuant to Petitioner's pleadings, he has been denied First Step Act time credited against his sentence. ECF No. 6. Petitioner claims that he is entitled to release to home confinement, as early as February 23, 2023. Id. He seeks injunctive relief as a means to compel the proper calculation of both his FSA credits and his projected release date, and to expedite his transfer to home confinement or prerelease custody. ECF No. 6 at 1 – 2.

Although Petitioner alleges that he has been denied the appropriate calculation of his sentence, he does not meet the four-part Winter test for issuance of such a preliminary injunction. First, Petitioner has not shown he is likely to succeed on the merits in regard to his claim. As discussed above, even if Petitioner were entitled to 15 days of Earned Time Credits for each 30-day period of his incarceration, pursuant to 28 CFR §§ 523.42 and 523.44, such credits would first be applied to his term of supervised release or home

16

incarceration, before being applied to his term of incarceration.

Further, Petitioner is unable to demonstrate that he is likely to suffer irreparable harm in the absence of preliminary relief in order to meet the second prong of Winter. The undersigned acknowledges that being incarcerated beyond the legal terms of sentence constitutes irreparable harm. However, although Petitioner makes such an allegation, he is unable to demonstrate that absent injunctive relief that he would be released at any time during 2023.

Accordingly, the exigencies of the situation do not warrant relief. Because Petitioner cannot meet the first or second prong of Winter, the undersigned need not address the other prongs. For all the above reasons, Petitioner cannot meet all four prongs of the Winter test, and thus is not entitled to injunctive relief.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the petition for habeas corpus [ECF No. 1] filed on February 3, 2023, be denied and dismissed without prejudice, and that Petitioner's request for injunctive relief filed on February 13, 2023 [ECF No. 6] be **DENIED.**

It is also **RECOMMENDED** that Petitioner's motion to excuse delay [ECF No. 15], and motion for leave to file excess pages [ECF No. 16] be **GRANTED**.

It is further **RECOMMENDED** that Petitioner's motion to expedite and for declaratory relief [ECF No. 12] and motion to excuse excess pages [ECF No. 13] this matter be **TERMINATED as MOOT.**

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written**

**objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record by electronic means.

DATED:    April 24, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE